Hamlin Neon Sign Co., Inc. v. Commissioner.
Hamlin Neon Sign Co. v. Commissioner
Docket No. 107253.
United States Tax Court
1942 Tax Ct. Memo LEXIS 76; 1 T.C.M. (CCH) 126; T.C.M. (RIA) 42605; November 24, 1942
*76 C. M. Dawson, C.P.A., for the petitioner. Harry R. Horrow, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, J.: This proceeding involves income and excess profits tax deficiences for the years 1936, 1937 and 1938. The deficiency determined for each year is not disclosed by the record, the amounts thereof being stated in the aggregate as an income tax deficiency of $3,717.03 and an excess profits tax deficiency of $110.59. Respondent's brief sets up the deficiencies in income taxes for 1936, 1937 and 1938 in the respective amounts of $1,832.06, $1,278.52 and $606.45, but makes no mention of the excess profits tax liability. In view of our determination of the issue presented the exact amounts of the deficiencies can be redetermined under Rule 50. The sole issue is whether respondent erred in disallowing a deduction for each of the taxable years representing petitioner's estimated liability for future services under certain conditional sales' agreements. Findings of Fact Petitioner is a corporation with its principal office in Fresno, California. Its returns for the taxable years were filed with the collector for the first district of California. *77 Petitioner was engaged in selling, installing, and servicing neon signs in and around Fresno, California. The signs were sold under conditional sales' agreements which, after setting forth the price of the display, the terms of payment, the specifications of the sign to be installed, the location thereof, and that petitioner would obtain permits for installation, and would guarantee the installation against defective workmanship and materials for a stated period of time, provided in part as follows: D. MAINTENANCE. The service items specified below shall be provided by Seller at its expense for the term of this agreement, except as otherwise provided herein. 1. REGULAR SERVICE as follows (IS) (* * *) included in this agreement, such service to include Regulation inspection and cleaning of display. 2. REPAINTING is included Once * * * during the term of this agreement. 3. MECHANICAL ELECTRICAL or NEON replacements or repairs to the display, as required at any time and from any cause except breakage by Purchaser, his agents or employees, shall be provided within 36 hours from receipt of written notice from Purchaser. If Seller fails to perform such service. Purchaser shall receive *78 a credit of 1/720th of the monthly payment for every hour during which the display shall fail to operate in whole or in part in excess of said 36-hour period, but shall be entitled to no other claim for damages. Petitioner, as seller, agreed to carry insurance on the display against loss or damage by fire, cyclone, tornado, windstorm, and/or flood during the term of the agreement and in the event of loss petitioner agreed to replace the display with another of equal value. In fixing the sale price for its neon signs petitioner's manager first figured the selling price for the neon sign. To this he added interest on the amount of the purchase price that was to be carried, insurance for the period of months indicated by the agreement, plus estimated maintenance charges for cleaning, inspecting, repainting, replacement and for repairs over the period of the conditional sales agreement. The costs for maintenance items and service were based on price lists furnished by manufacturers, on a fixed price per square foot of surface for painting and service on the sign itself at so much per linear foot. No records were maintained by petitioner showing the computation of or the various amounts *79 added to the selling price of the sign itself in order to determine the contract price set forth in the conditional sales agreement. The purchaser was not informed that a portion of the agreed contract price was for maintenance and service of the sign over the period of the contract. Petitioner determined its gross sales for each of the taxable years by including therein the entire contract price due under its conditional sales' agreements. Petitioner's annual sales for each of the taxable years were reduced by the estimated amount of its future service liabilities outstanding at December 31st of each year. The amount of this future service liability at the end of each year was estimated by the same manager in the same day that he originally fixed the price in the conditional sales' agreements, i.e., by taking each conditional sales agreement having an unexpired term and estimating petitioner's liability thereunder for service over the remaining months of the contract. The results of his computations were reflected in petitioner's general ledger in an account designated "reserve for service liabilities", the entire entries in which were stipulated to be as follows: Date
Debit
Credit
Balance
Dec. 31, 1934
$2,440.60
$ 2,440.60
1935
8,027.96
10,468.56
1936
7,203.79
17,672.35
1937
5,893.60
23,565.95
1938
4,712.00
28,277.95
1939
2,418.00
30,695.95
1940
3,738.18
34,434.13
1941
773.00
35,207.13
*80 No debits are recorded in this "reserve for service liability" account. Petitioner's "Sales of signs" account was debited with an amount corresponding to the credit entry in the reserve for service liabilities account for each of the taxable years 1936, 1937 and 1938 in the respective amounts of $7,293.79, $5,893.60, and $4,712.00. Upon the expiration of the term of the conditional sales agreement petitioner entered into a maintenance agreement with the owner of the neon sign for regular inspection and cleaning of the sign, repainting as needed, replacements and repairs, and insurance for an agreed price of so much per month. The rate agreed upon was payable monthly in advance and was included in petitioner's gross sales. The expenses incurred maintaining and servicing the neon signs under the conditional sales agreements were not kept separate from other operating expenses and were not segregated on petitioner's books of account from expenses incurred for other purposes but were included in and deducted with other expenses in accordance with petitioner's usual practice in keeping its books. Opinion Petitioner contends that its true net income is not reflected by the changes in *81 its accounting method made by respondent, and that its method of accounting, which has been consistent and uniform, clearly reflects its true net income. Respondent contends that petitioner properly included the entire sales price of its conditional sales agreements in income in the year in which the contract was executed, but asserts that petitioner is not entitled to deduct therefrom the estimated reserve for future service liabilities. The petitioner's argument is directed toward securing an adjustment of its gross income from conditional sales' agreements on the theory that a portion thereof is unearned. Regardless of the method used by petitioner in computing this so-called "unearned income" the rule is established contra to petitioner's contention. Upon principle there is no distinction between petitioner's situation and the situation of the taxpayers in ; ; ; . In the Vang case, *82 supra, the Circuit Court pointed out that the taxpayer regarded its paving contracts "as not completed (and therefore its profits and gains not income subject to tax) until the end of the five years' period of maintenance following the full completion of the work and full payment of the contract price when final maintenance costs had become definitely known." But the court held the contract was completed and gain or loss resulted when the construction work was finished, the contract price paid, and the road turned over to the city or county authorities. The court further pointed out that costs of maintenance, if any, during the five year period would be deductible from income in the year in which income was received but would not serve to keep the paving contract open or postpone payment of the tax on income received thereunder. As respondent points out the situation here is much the same. Petitioner's liability for maintenance, repairs, replacements, etc., is contingent in many respects. Its reserve for service liability corresponds to the reserve for maintenance of paving in the Vang case, supra. Petitioner deducted as expenses the costs of servicing, repainting, *83 repairing and caring for its signs, which is entirely in accord with the court's comment in the Vang case. Necessarily, in both this case and the Vang case, the reserve represents an estimate of contingent maintenance costs. The fact that petitioner's estimate may be more accurately obtained because of known factors does not in our opinion support petitioner's claim that its method of accounting more clearly reflects its true income than that adopted by respondent. The burden is on petitioner to show that its accounting methods clearly reflect its net income. This burden petitioner has not sustained. The evidence shows that petitioner's general business expenses, which were claimed and allowed as deductions, include the expenses incurred in maintaining and servicing signs sold under conditional sales agreement. Petitioner kept no record of the expenses incurred in servicing its signs, and its books afford no basis for a segregation of such expenses from the other expenses of petitioner's business. Under these circumstances it is impossible to adjust the liability accrued on petitioner's books at the end of each taxable year so as to reflect the expenses actually incurred *84 in performing under the maintenance clause of its conditional sales contracts. Therefore, if petitioner is permitted to reduce its annual gross sales by the amount of its accrued estimated liability and is also permitted to deduct the expenses incurred in meeting this estimated liability, it will in effect secure a double deduction. Obviously petitioner is not entitled to use a method of accounting that distorts its taxable income, and since the method used does not clearly reflect the income, respondent is authorized by law to make such changes as will reflect the income. Section 41, Revenue Acts of 1936 and 1938. In our opinion the changes made by respondent in petitioner's method of accounting were proper and his action is accordingly approved. The amount of the deficiencies for each year should be set forth under Rule 50 so that decision may be entered. Decision will be entered under Rule 50.